FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2013 MAY 28 AM 10 07

STEPHAN HARRIS, CLERK
CHEYENNE

# UNITED STATES DISTRICT COURT

# DISTRICT OF WYOMING

KEVIN B. CALES and ANN CALES,

Plaintiffs,

v.

HALLIBURTON ENERGY SERVICES, INC., JOHN DOES 1–10, and JANE DOES 1–10,

Defendants.

Case No. 12–CV–37–ABJ

## OPINION AND ORDER DENYING HALLIBURTON'S MOTION FOR SUMMARY JUDGMENT

After a handrail on a piece of Halliburton Energy Services's equipment collapsed on and pinned Dennis Sabe, Kevin Cales managed to lift it off but tore some cartilage in his ribs and slipped a disc in his back in the process. Seeking to recover for those injuries, Kevin and Ann Cales brought negligence and loss-of-consortium claims against Halliburton, contending Halliburton's negligence placed Mr. Sabe in danger and that Mr. Cales can recover under the rescue doctrine. Halliburton has now filed a motion for summary judgment. Because a genuine dispute of material fact exists as to whether Mr. Cales reasonably believed Mr. Sabe was in immediate danger for purposes of the rescue doctrine, the Court **DENIES** Halliburton's motion.

## FACTS

One evening in February 2008, Kevin Cales got a call from his boss, Edgar Bobo, asking for help delivering a bunch of hose to a Halliburton worksite near Wamsutter, Wyoming. Mr. Cales agreed to lend a hand, helped load up the hose, and the two drove off to the worksite.

They met Dennis Sabe when they got there. Mr. Sabe was delivering a load of sand, which Halliburton uses in its oil and gas operations. Mr. Sabe's job was to transfer the sand from his truck-trailer rig to a Halliburton mountain mover, a very large piece of equipment that stores the sand Halliburton uses. The mountain mover is about six feet tall with a ladder on one end that allows workers to climb on top to check how much sand is in there. It also has protective handrails running the length of it on both sides. The handrails are secured in place by metal pins.

On this particular evening, Mr. Sabe had not brought enough hose to connect his truck to the mountain mover. That's where Mr. Bobo and Mr. Cales came in. After hooking up the hoses, Mr. Sabe started transferring the sand to the mountain mover. After several hours, sometime around 2:00 a.m. and with the temperature around zero degrees, Mr. Sabe climbed up the mountain mover and checked if it was full. As he was walking back to the ladder to climb down, Mr. Sabe suddenly slipped and grabbed the handrail to steady himself. But the handrail wasn't properly secured with the pins so it collapsed on top of him and pinned him in place. Unable to free himself, he started yelling for help.

Meanwhile, Mr. Cales had seen Mr. Sabe fall and disappear out of sight so he ran over to see what had happened. When he got there, he saw Mr. Sabe hanging off the edge of the mountain mover screaming for help. Believing Mr. Sabe was in pain, Mr. Cales climbed partway

up the ladder and tried (unsuccessfully) to push the handrail off Mr. Sabe. While pushing, Mr. Cales felt something pop in his ribs and back. Undeterred, he climbed up and over Mr. Sabe and lifted the handrail just enough so Mr. Sabe could wiggle out from underneath it. While lifting, Mr. Cales again experienced pain in his ribs and back. As it turns out, in the course of things Mr. Cales had torn some cartilage in his ribs and slipped a disc in his back.

Seeking to recover for those injuries, Mr. and Mrs. Cales sued Halliburton for negligence and loss of consortium. Mr. Cales believes Halliburton's negligence in failing to properly secure the handrail placed Mr. Sabe in danger. And because Mr. Cales was injured while rescuing Mr. Sabe, Mr. Cales believes he can recover from Halliburton under the rescue doctrine.

Halliburton doesn't think so and has filed a summary judgment motion to that effect. It argues that the rescue doctrine requires a showing that the rescued person was actually in immediate danger. Here, according to Halliburton, that necessary element of Mr. Cales's claim is missing because Mr. Sabe was never actually in immediate danger.

Mr. Cales quarrels with Halliburton's major premise. He argues that a plaintiff can recover under the rescue doctrine, even if the rescued person was not actually in danger, so long as the plaintiff *reasonably believed* the rescued person was in danger. Here, according to Mr. Cales, a genuine dispute of material fact exists as to whether Mr. Cales harbored such a belief. And that dispute, says Mr. Cales, must be resolved by a jury, precluding summary judgment.

The Court first will discuss the standard of review. Next, it will discuss the rescue doctrine and whether a genuine dispute of material fact exists in this case precluding summary judgment. A brief conclusion follows.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine if a reasonable juror could resolve the dispute in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." *Anderson*, 477 U.S. at 255.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party may satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).

Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive a summary judgment motion, the nonmoving

- 4 -

party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, when opposing a summary judgment motion, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact-finder, not the court. *Id.* at 255.

## DISCUSSION

The rescue doctrine is "[t]he principle that a tortfeasor who negligently endangered a person is liable for injuries to someone who reasonably attempted to rescue the person in danger." *Black's Law Dictionary* 1421 (9th ed. 2009); *see Dubus v. Dresser Indus.*, 649 P.2d 198, 206 (Wyo. 1982). The doctrine traces back to the early twentieth century and the pen of Benjamin Cardozo, who described the doctrine's rationale this way:

> Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer. . . . The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path. . . . The

> emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had.

*Wagner v. Int'l Ry. Co.*, 133 N.E. 437, 437–38 (N.Y. 1921).

Today, a claim under the rescue doctrine consists of four elements: (1) the defendant's negligent conduct placed a person in danger, (2) the person was in immediate danger, (3) the plaintiff did not act rashly or recklessly in carrying out the rescue, and (4) the plaintiff was injured in the course of the rescue. *See Dubus*, 649 P.2d at 206; Diane M. Arnold, *Cause of Action for Injury Sustained in Attempt to Rescue Person from Imminent Peril*, 30 Causes of Action 449 (1992). The focus of Halliburton's summary judgment motion is on the second element.

Halliburton argues that a plaintiff can satisfy the second element only by proving the rescued person was actually in immediate danger. Mr. Cales disagrees. He argues that a plaintiff can satisfy the second element by showing the plaintiff reasonably believed the rescued person was in immediate danger. The issue is who's right. The Court concludes Mr. Cales is.

The Wyoming Supreme Court has held that a plaintiff can recover under the rescue doctrine if the plaintiff reasonably believed the rescued person was in immediate danger. *See Franklin v. Lowe*, 389 P.2d 1012, 1013 (Wyo. 1964). In *Franklin*, the plaintiff sued the defendant under the rescue doctrine for injuries sustained while trying to stop the defendant's unattended car from rolling down a hill toward the plaintiff's car and two-year-old son. *Id.* at 1013. The defendant argued the plaintiff had no reason to believe either persons or property were in danger and thus could not recover under the rescue doctrine. *Id.* But the court rejected that

argument. Instead, it adopted the principle that a plaintiff can recover under the rescue doctrine "if the attendant circumstances created the apprehension of danger," and it concluded there was sufficient evidence "to instill in plaintiff apprehension of an impending danger to persons and property and to prompt and justify his efforts in trying to avert those perils." *Id.* at 1013–14. *Franklin* thus adopted the view that a plaintiff can recover under the rescue doctrine if the plaintiff reasonably believed the rescued person was in immediate danger.

Wyoming is hardly alone in that view. Indeed, many jurisdictions have adopted it,[1] and the Tenth Circuit has recognized Wyoming's adoption of it. *Dinsmoore v. Bd. of Trs. of Mem'l Hosp. of Campbell Cnty.*, 936 F.2d 505, 507 (10th Cir. 1991). Thus, Mr. Cales has it right: Under Wyoming law, a plaintiff can recover via the rescue doctrine if the plaintiff reasonably believed the rescued person was in immediate danger.

---

[1] *See, e.g., Frederick v. Mobil Oil Corp.*, 765 F.2d 442, 446 (5th Cir. 1985) (stating that, under Louisiana law, a plaintiff can recover under the rescue doctrine if the rescued person "was or appeared to be in imminent peril"); *Trapp v. Vess*, 847 So. 2d 304, 307 (Ala. 2002) (holding that a plaintiff can recover under the rescue doctrine if "he had a reasonable belief that the person he was trying to rescue was in a dangerous position"); *Lambert v. Parrish*, 467 N.E.2d 791, 799 (Ind. Ct. App. 1984) ("The better view, however, and better supported by authority, is that the rescuer is not barred from recovery if his *belief* that the victim requires rescue is *not unreasonable* in light of the facts and circumstances known to and reasonably believed by him."), *vacated on other grounds*, 492 N.E.2d 289 (Ind. 1986); *Henneman v. McCalla*, 148 N.W.2d 447, 455 (Iowa 1967) (holding that the rescue doctrine applies "even though no danger is actually imminent"); *Solomon v. Shuell*, 457 N.W.2d 669, 683 (Mich. 1990) (holding that "the rescue doctrine applies even if the victim never was in actual danger"); *McConnell v. Pic-Walsh Freight Co.*, 432 S.W.2d 292, 300 (Mo. 1968) (concluding that the rescue doctrine applied where sufficient evidence supported the plaintiff's belief that human life was in danger); *Provenzo v. Sam*, 244 N.E.2d 26, 28 (N.Y. 1968) (stating that the absence of actual peril does not preclude recovery under the rescue doctrine); *Gifford v. Haller*, 710 N.Y.S.2d 187, 189 (N.Y. App. Div. 2000) ("The [rescue] doctrine has been held to apply, however, where a potential rescuer reasonably believes that another is in peril, and the fact that the danger did not actually exist does not abrogate liability" (citations omitted)); *Wolff v. Light*, 159 N.W.2d 93, 99 (N.D. 1969) (holding that the rescue doctrine applies if the rescued person "appeared to be in such danger that the actions of the rescuer were reasonable under the circumstances"); *Marks v. Wagner*, 370 N.E.2d 480, 484 (Ohio Ct. App. 1977) ("[T]he circumstance to be considered is not the fact of peril but the reasonable belief of continued peril."); *Commonwealth v. Millsaps*, 352 S.E.2d 311, 313 (Va. 1987) (holding that "the doctrine is broad enough to cover a rescuer who acts on a reasonable appearance of peril to another").

The Court next turns to whether a genuine dispute of material fact exists as to whether Mr. Cales reasonably believed Mr. Sabe was in immediate danger. The Court concludes that a genuine dispute exists on that score.

Mr. Cales testified that he saw Mr. Sabe fall and disappear out of sight while Mr. Sabe was on top of the mountain mover. Cales Dep. 50:4–12, ECF No. 36-2. He further testified that when he ran over he saw Mr. Sabe hanging over the edge of the mountain mover screaming for help. *Id.* at 50:14–18, 56:3–4, 101:17. According to Mr. Cales, this was no ordinary cry for help—Mr. Sabe apparently was "screaming like a madman." *Id.* at 57:1. He believed Mr. Sabe was screaming because he was in pain, trapped, and "freaked out." *Id.* at 57:5–6. In short, Mr. Cales believed "[i]t was an emergency." *Id.* at 58:25–59:2. Based on this testimony, a reasonable juror could find that Mr. Cales reasonably believed Mr. Sabe was in immediate danger. A genuine dispute of material fact thus exists in this case, precluding summary judgment.

The Court notes that even if Halliburton were right—that is, even if Mr. Cales had to demonstrate Mr. Sabe was actually in immediate danger—summary judgment still would be inappropriate. That's because a reasonable juror could find that Mr. Sabe *was* in immediate danger. Mr. Sabe testified that he yelled for help because he couldn't get the handrail off him and was concerned that, stuck as he was, he might get hypothermia given the severe cold. Sabe Dep. 46:9–47:1, ECF No. 36-3. Mr. Cales similarly testified that had he not rescued Mr. Sabe his "odds of survival would have been greatly diminished" because of the cold. Cales Dep. 130:15–131:1, ECF No. 36-2. In short, but for Mr. Cales's rescue, he believes "[i]t could have been really bad for [Mr. Sabe]." *Id.* at 130:25–131:1. A reasonable juror could find from this

testimony that Mr. Sabe was actually in immediate danger. So even assuming Halliburton's view of the rescue doctrine is correct, summary judgment still would be inappropriate.

## CONCLUSION

A genuine dispute of material fact exists as to whether Mr. Cales reasonably believed Mr. Sabe was in immediate danger for purposes of Mr. Cales's claim under the rescue doctrine. The Court therefore **DENIES** Halliburton's motion for summary judgment.

Dated this 23rd day of May, 2013.

Alan B. Johnson
United States District Judge